750 So.2d 353 (1999)
STATE of Louisiana
v.
Antonio RANDLE & Lawrence Joseph.
No. 98-KA-1670.
Court of Appeal of Louisiana, Fourth Circuit.
December 22, 1999.
*354 Harry F. Connick, District Attorney, John Jerry Glas, Assistant District Attorney, Orleans Parish, New Orleans, Counsel For Plaintiff/Appellee.
Christopher Albert Aberle, Louisiana Appellate Project Mandeville, Counsel For Defendant/Appellant Antonio Randle.
Val K. Scheurich III, New Orleans, Counsel For Defendant/Appellant Lawrence Joseph.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY.
KIRBY, Judge.
On October 31, 1996, appellants Antonio Randle and Lawrence Joseph and co-defendant Curtis Sawyer were charged by grand jury indictment for drug offenses. Joseph and Sawyer were charged in count one with distribution of heroin and in count two with possession of heroin with intent to distribute. Randle was charged in count three with simple possession of heroin. A motion to suppress evidence and preliminary hearing was held on May 1, 1997. Despite the grand jury indictment, as to defendants Joseph and Sawyer, the court found no probable cause for distribution of heroin, but maintained the charges against them for possession with intent to distribute and the charge against Randle for simple possession. The motion to suppress was taken under advisement. On May 13, 1997, the court found probable cause for the arrest and denied the motion to suppress evidence. On January 20, 1998, Joseph was tried by a jury, while Randle and Sawyer had their case decided by the court. The jury found Joseph guilty of simple possession of heroin as to both counts. On January 30, 1998, the trial court rendered its judgment as to the other defendants. The court found Randle guilty of attempted possession of heroin and found Sawyer not guilty.
On January 30, 1998, the court sentenced Joseph on each count to four years at hard labor without benefit of probation or suspension of sentence, to run *355 concurrently.[1] The State filed multiple bills against Joseph and Randle, which were set for hearing. On March 20, 1998, Randle pled guilty to the multiple bill and was sentenced to two and one-half years without benefit of probation, parole or suspension of sentence, under La. R.S. 15:529.1.[2]

STATEMENT OF THE FACTS
On September 12, 1996, at about 7:25 p.m., Officer Randy Lewis observed defendants Curtis Sawyer and Lawrence Joseph at the corner of Thalia and Prieur Streets. Officer Lewis was driving a non-traditional undercover vehicle on his way to a meeting with the ATF task force at Central Lockup, when he observed Sawyer and Joseph in what appeared to be a drug transaction with an unknown female. Officer Lewis further observed that, after the transaction, Joseph went over to a new red Dodge Ram pickup truck on Prieur Street and sat down in it. Officer Lewis continued on to his meeting and shared this information with other members of the task force. He then returned to the location with other officers, in a second vehicle, who could assist him.
Upon his return, Officer Lewis drove past the scene, then U-turned back to the area, while Officer Dwayne Scheuermann and Agent Matt Noel of the Drug Enforcement Authority (DEA), in a traditional and recognizable unmarked vehicle, followed behind and drove directly up to the suspects. When Officer Lewis returned to the scene, he observed defendant Antonio Randle give currency to defendant Joseph. He further observed defendant Sawyer place something into Randle's hand.
When the suspects recognized Scheuermann's vehicle, they immediately dispersed in different directions. Randle walked to a store several feet away. Officer Lewis subsequently observed Randle discard a small object. Officer Lewis retrieved the object, which was subsequently found to be heroin. Lewis apprehended Randle and walked him over to the pickup truck, where Officer Scheuermann had apprehended Joseph and Sawyer. Officer Scheuermann called Officer Lewis's attention to several foil packets discarded on the ground near the gate and another plastic bag thrown just underneath the truck. Officer Scheuermann advised Officer Lewis that the bag near the gate, which contained at least two foil packets of heroin, was discarded by Sawyer, and the bag under the truck, which contained several foil packets, was discarded by Joseph. Officer Lewis retrieved the bags from the ground while Officer Scheuermann maintained control of the suspects.
In the course of arresting the three defendants, the officers noticed a fourth subject sitting in the passenger seat of the truck. He identified himself as Lawrence Joseph's brother-in-law. He stated that he just walked over to ask Joseph for a ride. Officer Lewis did not notice him in the truck when he first passed the scene. The passenger was searched, found to be free of narcotics, and released. The officers also stopped another person on the scene. He was likewise found to be without narcotics on his person and released.
*356 The officers then inquired as to the ownership of the truck. None of the suspects claimed ownership. The officers looked into the truck's console, where they found an address book with Lawrence Joseph's name on the cover and a piece of a check which matched the checks in the checkbook found on the person of Lawrence Joseph. Forty-two dollars was also found on the person of Lawrence Joseph. While searching for the ownership documents, the officers found a bag of unpackaged heroin. Additional investigation uncovered that the truck had been reported stolen from a dealership, and that a Lawrence Joseph was the person who took it off the lot for a test drive and failed to return it.
Following the testimony of Officer Lewis and the stipulation that the bags and foil packets all tested positive for heroin, the State rested. Lawrence Joseph rested on the presumption of innocence. Defendants Randle and Sawyer put on witnesses and testified themselves.
Deborah Hamilton testified that she was in the neighborhood on the night in question to visit her mother. She testified that there was no stop sign on the corner of Prieur and Thalia, contradicting Officer Lewis's testimony that he first observed the subjects while stopped at a stop sign on the corner. Hamilton further testified that she observed a police car in the middle of Thalia Street watching guys on the corner, then police cars came from everywhere. She further testified that the officers went into a store and brought Antonio Randle out to arrest him. She testified that Sawyer and Randle did not pass drugs, they merely exchanged "dap."[3] She further testified that she saw this from across the street. She could not see the color of the truck and did not know Lawrence Joseph or see him on the scene.
Robin Jackson testified that she saw Curtis Sawyer sitting on his steps on the evening in question. He asked her for two dollars. She went to the store and bought some items in order to get change. She testified that she was about to give Sawyer the two dollars when he was arrested.
Marvin Turner of the Department of Public Works testified that there was no stop sign at the corner of Prieur and Thalia Streets, and never had been. This contradicted the testimony of Officer Lewis that he observed the initial transaction while stopped at a stop sign at that location.
Antonio Randle admitted prior convictions for possession of cocaine and possession of marijuana. He testified that Officer Scheuermann stopped him as he was coming out of the store. He further testified that both Officer Scheuermann and Agent Noel searched him and found nothing. Randle denied having ever seen the foil packet of heroin, which he allegedly abandoned. He testified that he had not spoken to Curtis Sawyer that evening, prior to the arrest, and had not exchanged "dap" with him. He suggested that Deborah Hamilton might have thought that he did, but he did not.
Curtis Sawyer admitted prior convictions for drugs in 1970, manslaughter in 1975, and burglary in 1991. He testified that he had been home from a prison detoxification center for only twenty days when he was arrested on the instant charge. He testified that the lady Officer Lewis observed when he first passed the scene was Robin Jackson. He testified that he spoke to her to ask her for a couple of dollars, not to pass drugs to her. He admitted speaking to several of the guys on the corner. He testified that he was just talking to those people when Officer Scheuermann came up to him. He further testified that he did not see Officer Lewis earlier in the evening, that he had just gotten to the area a few minutes before his arrest, and that he was never around the truck or dealing drugs.
*357 Officer Scheuermann testified on rebuttal. His testimony differed from Officer Lewis's in that Officer Scheuermann testified that he, not Lewis, followed Randle up the street, observed him discard the packet of heroin and arrested him. On cross-examination, Officer Scheuermann testified that he saw Sawyer hand something to Randle, but that he never saw Joseph involved in the transaction. He presumed that Joseph was involved because of his close proximity to the others and because of information from Officer Lewis relative to a prior transaction.

ERRORS PATENT REVIEW
A review of the record for errors patent reveals an error in the sentencing of Antonio Randle. The statute that prohibits the possession of heroin does not provide that the sentence be without benefit of parole. La. R.S. 40:966(C)(1). Because the statute does not prohibit parole, the defendant's enhanced sentence should not have prohibited parole. His parole eligibility is to be determined by the Department of Corrections pursuant to La. R.S. 15:574.4. State v. Bell, 543 So.2d 965 (La.App. 4th Cir.1989). Defendant Randle's sentence will be amended to delete the prohibition against parole.

ASSIGNMENT ONE  RANDLE
Appellant Randle argues that the evidence is insufficient to support his conviction. In reviewing a claim for sufficiency of the evidence to support a conviction, a reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). In applying this standard, the reviewing court must defer to the credibility choices and justifiable inferences of fact made by the jury. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Rosiere, 488 So.2d 965 (La. 1986); State v. Foy, 439 So.2d 433 (La. 1983). When circumstantial evidence forms the basis of a conviction, the elements must be proven so that every reasonable hypothesis of innocence is excluded. State v. Langford, 483 So.2d 979 (La. 1986). La. R.S. 15:438. La. R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ denied, 566 So.2d 395 (La. 1990).
The appellant argues that Officer Lewis could not have seen the article that was allegedly passed to him by defendant Sawyer. The appellant further argues that Officer Lewis did not actually see what he dropped. He suggests that the heroin might have already been on the ground when Officer Lewis observed him drop some other debris, such as a gum wrapper or cigarette butt. The trial judge, as the trier of fact relative to Sawyer and Randle, apparently agreed relative to the transfer from Sawyer to Randle, thus finding Sawyer not guilty. However, the trial transcript supports the court's finding as to attempted possession by Randle.
In direct examination Officer Lewis testified that the particular corner was "well lit" and he was "real close to the subject when he threw it down." Officer Lewis was then asked if the heroin package might not have been on the ground before. Officer Lewis said he was positive that it was not, noting: "It landed right smack in the middle of the sidewalk."
From the testimony of Officer Lewis and the stipulation that the evidence abandoned by the appellant tested positive for *358 heroin, a rational trier of fact could have concluded beyond a reasonable doubt that the appellant attempted to possess heroin.

ASSIGNMENT TWO  RANDLE
Appellant Randle secondly argues that the trial court erred in permitting the trial to proceed in the absence of a subpoenaed alibi witness. La.C.Cr.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
A trial court's decision to deny or grant a continuance is within its broad discretion and will not be disturbed absent a clear showing of abuse. The decision turns on the circumstances of each case and should not be disturbed absent a showing of specific prejudice. State v. Cockerham, 95-0172 (La.App. 4th Cir. 3/14/96), 671 So.2d 967, 671 So.2d 967, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363.
In the instant case, the State concedes that the witness, a Mr. Ali, was properly subpoenaed. The State further concedes that defense counsel visited Mr. Ali at his store and was assured that he would appear for trial. However, the State submits that Mr. Ali's testimony would not have affected the verdict.
Counsel for Randle moved to sever the case because Randle and Sawyer planned to take the stand and present defenses which would be antagonistic to defendant Joseph. Counsel for Randle additionally moved to continue the trial based upon the failure of a material witness to appear.
The court first denied the motion to sever finding that the defenses were not antagonistic. The court further noted that, considering that Randle and Sawyer had elected a bench trial, any testimony they made about Mr. Joseph could be made when the jury was not present.
The court then likewise denied the continuance. At the motion to continue, counsel argued that the witness would assert that defendant Randle was innocent and had nothing to do with the case. In previous argument relative to the motion to sever, counsel argued that defendant Randle was in Mr. Ali's store, "maybe 40 yards from the corner" when he was arrested and thus had nothing to do with the drug activity on the corner. The court gave no particular reason for denying the continuance, except to express its desire to "go forward" and "end this."
In his appeal brief, the defendant avers that the witness would have corroborated his testimony that he was shopping in Mr. Ali's food store when Officer Scheuermann came in and arrested him just before he exited. Witness Deborah Hamilton testified that the police went into the store to arrest Antonio Randle. She further testified that she observed Curtis (defendant Sawyer) and Kooter ( defendant Randle) exchange "dap" prior to Randle's going into the store. Officer Lewis testified that Randle received something in a transaction with Sawyer, then immediately walk away at a fast pace after noticing Officer Scheuermann's vehicle. Officer Lewis further testified that Randle dropped something as he passed the front of the truck. Officer Scheuermann testified that after Sawyer and Randle engaged in an apparent drug transaction, Randle left the scene and stopped at the store.
The testimony that Mr. Ali would allegedly have given would merely have corroborated the testimony of defense witness Deborah Hamilton, to the effect that Randle was in the store when he was arrested. *359 Moreover, it would not conflict with the testimony of either of the testifying officers. Officer Scheuermann observed that Randle left the scene and went into the store. Officer Lewis was not specific as to where Randle went when he left the scene, but noted that he left in a hurry when he recognized a police car and dropped something on his way. Accordingly, appellant Randle was not prejudiced by the trial court's denial of the continuance based on the absence of a witness.

ASSIGNMENT ONE  JOSEPH
Appellant Joseph argues that the trial court erred in denying the motion to suppress evidence. He specifically contends that the officers had no authority to search the console of the truck, where the officers found a bag of loose heroin which had not yet been packaged for individual street sales. The appellant argues that the heroin was not in plain view, and there were no exigent circumstances that required the search. Rather, the appellant avers that a simple radio call would have determined that the vehicle was stolen and thus subject to impound, at which time the officers could have obtained a warrant.
Evidence found as a result of a violation of a defendant's constitutional rights is admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); State v. Knapper, 626 So.2d 395, 396 (La.App. 4th Cir.1993), writ denied 93-2950 (La.1/28/94), 630 So.2d 798.
Officer Lewis observed Joseph go to the truck after the apparent transaction with a female when he first passed the location. The second apparent transaction occurred while Sawyer and Joseph were standing at the rear of the truck. The officers found a bag containing ten bags of heroin discarded by defendant Joseph under the truck. In addition, a subject who identified himself as Joseph's brother-in-law was seated in the passenger seat when the officers made the arrests. It was thus not unreasonable for the officers to search for ownership papers when none of the subjects admitted ownership. However, assuming the officers had first determined that the vehicle was stolen and impounded it, the evidence would inevitably have been discovered. It is thus admissible under the inevitable discovery doctrine.

ASSIGNMENT TWO  JOSEPH
Appellant Joseph further argues that the trial court erred in permitting the jury to hear a rebuttal witness, even though he rested his case immediately after the State rested its case. The appellant correctly notes that La.C.Cr.P. art. 765(5) provides that the order of presentation of evidence shall be the evidence of the State, the evidence of the defendant, then the evidence of the State in rebuttal.
Although not specifically argued in his brief, as to the evidence allegedly dropped under the truck by defendant Joseph, Officer Lewis testified that he never saw Joseph drop it, but rather retrieved the items which Officer Scheuermann told him were dropped by Joseph and Sawyer. Officer Lewis personally observed Randle drop a package of heroin and, together with Officer Scheuermann, discovered the loose heroin in the truck console. Thus, the bag containing ten packages of heroin, which supported count one of the indictment against appellant Joseph, was linked to him merely by hearsay evidence in the case-in-chief. Officer Scheuermann testified in rebuttal over the strenuous objection of counsel for defendant Joseph. He testified that he personally observed Joseph discard the heroin under the truck, and pointed it out to Officer Lewis, who retrieved it.
If the trial court exercises its discretion to permit the State to offer in rebuttal material evidence inadvertently omitted from its case in chief, any prejudice thereby caused may normally be avoided by the trial court's permitting the *360 defendant to introduce additional evidence to defend against a new issue thereby raised. State v. Turner, 337 So.2d 455 (La.1976). Control of evidence presented by the State on rebuttal is within the sound discretion of the trial judge whose ruling will not be disturbed except in extreme cases, as where evidence has been kept back deliberately and for the purpose of deceiving and obtaining undue advantage of the defendant. State v. Hills, 354 So.2d 186 (La.1977). The prosecution may not introduce new issues or facts on rebuttal or reserve part of its case in chief for rebuttal. State v. George, 95-0110 (La.10/16/95), 661 So.2d 975. "When new facts or issues are adduced on rebuttal, a trial judge has the discretion to permit the introduction of additional defense evidence prior to closing argument.
An abuse of discretion resulting in prejudice to a defendant's presentation of a defense or impingement of his right to impeach the credibility of state witnesses constitutes reversible error." Id., 95-0110, p. 13, 661 So.2d at 981.
We do not find that the State deliberately held back Officer Scheuermann's testimony to obtain an unfair advantage. Rather, it appears to have been inadvertent. Defendant Joseph made no subsequent request for surrebuttal to counter Officer Scheuermann's testimony. Accordingly, he was not deprived of his right to present a defense or his right to impeach the credibility of a State witness. Joseph was thus not prejudiced by the court's admission of new facts on rebuttal.
For the reasons stated above, we affirm the conviction of Antonio Randle, but amend his sentence to delete the prohibition against parole. We affirm his sentence as amended. As to Lawrence Joseph, we affirm the convictions and sentences.
APPELLANT RANDLE'S CONVICTION AFFIRMED, SENTENCE AMENDED AND SENTENCE AFFIRMED AS AMENDED; APPELLANT JOSEPH'S CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The minute entry of that date indicates that Joseph was sentenced without parole; however, the transcript indicates that he was correctly sentenced without benefit of probation or suspension of sentence. When there is a conflict between the minute entry and the transcript, the transcript controls. State v. Beard, 547 So.2d 7 (La.App. 4th Cir.1989). Nevertheless, a supplemented docket master indicates that on August 2, 1999, the trial court, acting without benefit of the sentencing transcript, granted Joseph's Motion to Correct an Illegal Sentence, vacated the sentence imposed on January 30, 1998, and resentenced Joseph to four years at hard labor without benefit of probation or suspension of sentence, to run concurrently with any other sentence.
[2] As of the date of this appeal, the multiple bill proceedings against Joseph were still pending.
[3] "Dap" is a term used to describe a street handshake.