JAMES F. McKAY, III, Chief Judge.
|,The juvenile, O.W., appeals the judgment of the Juvenile Court for the Parish of Orleans, denying his motion to continue and adjudicating him delinquent of criminal trespass relative to La. R.S. 14:63. For the reasons that follow, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
On August 3, 2012, the State filed a petition in juvenile court alleging that O.W. committed the offense of criminal trespass at the home of Shelita Nash (“Mrs. Nash”), located at 4751 Knight Dr., New Orleans, Louisiana. Trial was set for October 9, 2012.
On the morning of trial, O.W. filed a motion for continuance, asserting that a witness had been located by an investigator on October 8, 2012.[1] Defense counsel requested time to issue a subpoena, indicating that the recently located witness was O.W.’s girlfriend, Mrs. Nash’s fifteen-year-old daughter. The trial court denied the motion for continuance. O.W. filed an application for a supervisory writ, which this Court denied. State in the interest of O. W., unpub., 2012-1461 (La.App. 4 Cir. 10/9/12).
¡2At trial, Mrs. Nash testified that on July 3, 2012, around 1:30 a.m., she and some relatives were in her living room. She stated that her daughter came into the room and revealed that someone was knocking on the bedroom window. As Mrs. Nash approached her daughter’s bedroom, she heard knocking. Mrs. Nash and her son exited the home and walked toward the backyard. Mrs. Nash explained that in order to get to her daughter’s window, a person had to enter the backyard. As they neared the backyard, Mrs. Nash saw the shadow of a person. Mrs. Nash and her son returned to the house and locked the door. Shortly thereafter, someone knocked on the front door. O.W. was at the door, asking for Mrs. Nash’s son.
Mrs. Nash asked O.W. to leave and closed the door. Mrs. Nash stated that at that time, O.W. went into the backyard and knocked on the window again. Mrs.Nash acknowledged that she could not actually see who was knocking on the window. Mrs. Nash called the police and provided them with O.W.’s name.
Mrs. Nash knew O.W. She testified that some months prior to the July 3, 2012 incident, she personally informed O.W. and his grandmother (O.W.’s guardian) that O.W. was not to have any dealings with her daughter, and was not to come to her house. No other witnesses were called.
At the conclusion of the trial, O.W. was adjudicated delinquent of criminal trespass relative to La. R.S. 14:63. O.W. was ordered to stay away from Mrs. Nash, her *176 daughter, and their home. O.W. was sentenced to thirty’days. The sentence was suspended, and O.W. was placed on active probation for six months. From that judgment, O.W. filed the instant appeal.
STANDARD OF REVIEW
[aIn order to adjudicate a child delinquent, the State must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. La. Ch.C. art. 883. The standard for the State’s burden of proof in a juvenile delinquency proceeding is “no less strenuous then the standard of proof required in a criminal proceeding against an adult.” State in the Interest of J.W., p. 3 (La.App. 4 Cir. 6/6/12), 95 So.3d 1181, 1184. As a court of review, we grant great deference to the juvenile court’s factual findings, credibility determinations, and assessment of witness testimony. State ex ret. W.B., 2008-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61.
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson standard of review is applicable in juvenile delinquency cases. State in the Interest of T.E., 2000-1810, p. 4 (La.App. 4 Cir. 4/11/01), 787 So.2d 414, 417.
In addition, La. Const, art. V, § 10(B) mandates that an appellate court review both law and facts when reviewing juvenile adjudications. “While delinquency proceedings may in many ways implicate criminal proceedings, sometimes even mimicking them, they are nonetheless civil in nature.” State ex rel. D.R. 2010-0405, p. 5 (La.App. 4 Cir 10/13/10), 50 So.3d 927, 930. Therefore, as in the review of civil cases, a factual finding made by a trial court in a juvenile ^adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong. See State in the Interest of Batiste, 367 So.2d 784 (La.1979); State in Interest of Q.T., 2012-0433, p. 4 (La.App. 4 Cir. 9/19/12), 100 So.3d 966, 969. In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether there is sufficient evidence to satisfy the standard of proof beyond a reasonable doubt. State in Interest of R.L., 2012-1721, p. 4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1147, 1150.
DISCUSSION
In the first assignment of error, O.W. asserts that the trial court abused its discretion in denying the motion to continue. On the morning of trial, O.W. filed for a continuance on the basis that a defense witness was located the previous day. Counsel for O.W. asserted that the witness, Mrs. Nash’s daughter, would testify that she invited O.W. to the house on July 3, 2012.
This Court recently discussed a motion to continue filed the morning of trial in a juvenile proceeding in State in the interest of J.T., 2011-1646 (La.App. 4 Cir. 5/16/12), 94 So.3d 847. Therein, we noted:
The decision whether to grant or to deny a motion to continue rests -within the trial court’s sound discretion, and a reviewing court will not disturb such a decision absent a clear abuse of discretion. State v. Reeves, [20]06-2419, p. 73 (La.5/5/09), 11 So.3d 1031, 1078-79, cert. denied, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009); State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, 755. The jurisprudence generally has “decline[d] to reverse a conviction even on a *177 showing of an improper denial of a motion for a continuance absent a showing of specific prejudice.” State v. Blank, [20]04-0204, p. 9 (La.4/11/07), 955 So.2d 90, 140 (citing State v. Champion, 412 So.2d 1048, 1051 (La.1982)); see also State v. Randle, 98-1670, p. 8 (La.App. 4 Cir. 12/22/99), 750 So.2d 853, 358 (noting that “[t]he decision turns on the circumstances of each case and should not be disturbed absent a showing of specific prejudice.”)
| ¿“When a motion to continue is based upon a claim of inadequate time to prepare a defense, the specific prejudice requirement has been disregarded only when the time has been ‘so minimal as to call into question the basic fairness of the proceeding.’ ” State v. Porche, [20]00-1391, p. 6 (La.App. 4 Cir. 2/14/01), 780 So.2d 1152, 1156 (quoting State v. Jones, 395 So.2d 751, 753 (La.1981)). “The reasonableness of discretion issue turns upon the circumstances of the particular case.” Porche, supra (citing State v. Simpson, 403 So.2d 1214 (La.1981)).
Id., p. 8, 94 So.3d at 853.
In denying the motion to continue in this case, the trial judge noted that the trial date of October 9, 2012, was selected on August 16, 2012, and that defense counsel had time to prepare for trial. The trial judge opined that the witness could have been subpoenaed before the morning of trial, and that counsel for O.W. made no effort to obtain the witness’ presence at trial.
O.W. claims that Mrs. Nash’s daughter invited him over. Clearly, this witness and her address were known to O.W., and defense counsel could have easily issued a subpoena prior to trial. Under the facts presented in this case, the trial court did not abuse its discretion in denying the motion to continue.
In his second assignment of error, O.W. asserts that the evidence adduced at trial was insufficient to sustain an adjudication of delinquency for the offense of criminal trespass.
La. R.S. 14:63 provides, in pertinent part:
A. No person shall enter any structure, watercraft, or movable owned by another without express, legal, or implied authorization.
B. No person shall enter upon immovable property owned by another without express, legal, or implied authorization.
C. No person shall remain in or upon property, moveable, or immovable, owned by another without express, legal, or implied authorization.
IfiD. It shall be an affirmative defense to a prosecution for a violation of Subsection A, B, or C of this Section, that the accused had express, legal, or implied authority to be in the movable or on the immovable property.
The evidence presented in this case clearly demonstrated that Mrs. Nash did not give O.W. permission to enter onto the front porch of her property at 1:30 a.m. To the contrary, it is undisputed that some months prior to the incident, Mrs. Nash personally informed O.W. and his grandmother that O.W. was not to come to her home. The fact that Mrs. Nash could not identify O.W. as the individual in her backyard is inconsequential.
In sum, the undisputed testimony of Mrs. Nash established that O.W. entered onto her property without express, legal, or implied authorization. As a result, the State proved beyond a reasonable doubt that O.W. was in violation of La. R.S. 14:63. Accordingly, we affirm the judg *178 ment adjudicating O.W. delinquent of criminal trespass.
AFFIRMED

. October 8, 2012, Columbus Day, was a court holiday.